By the Court—Robertson, J.
The defendant relies on two defenses in this case. First. The failure of the plaintiffs to notify him of the shipment of the goods in time to insure. Second. The taking a bill of lading exempting the carrier from liability for fire. Whether he considers the plaintiffs were bound to do both; that is, give such ■ notice and take a proper bill of lading, or whether, *477 if he secured the liability of the carrier as an insurer, the object of the other act of duty would be sufficiently attained, and the plaintiffs relieved from its performance, does not appear. In either case it will be necessary to examine the relations of the parties, and discover the true nature of the contract.
In the first place, the contract was not to deliver the goods in Yew York, to the defendant, and his liability accrued before that event. It seems to be conceded that he would have become liable at least as early as the shipment at Liverpool. It could not, therefore, be a contract for the sale and delivery of the goods, unless the shipment at Liverpool was to be taken as such delivery; if so, upon that delivery and the forwarding of the bills of lading, the plaintiffs’ performance of their part of the contract would be complete. Yo relation would remain between the parties as vendors and vendee, to impose on the former any duty to protect the latter from harm. Or even if a notice became necessary to the defendant as vendee, would the sale become void because not given at the earliest possible time after the shipment ? If the contract was one of mere sale and delivery, it was the business of the defendant to select the carrier, or, if he left the choice to the plaintiffs, to be ready to insure his interest at the instant of shipment. The carrier was the agent of either the defendant or the plaintiffs, in such case; if of the latter, the delivery was not complete until the goods arrived in Yew York; if of the former, it was so the moment they were put on board.
But there was no such contract as that between vendor and vendee; the plaintiffs were authorized to buy and ship as the defendant’s agents; they might have used his name as purchaser and left him alone responsible. It is true they personally assumed the responsibility to the sellers of the chains; but this did not alter the relation of principal and agent. From the domestic who is sent to a tradesman to purchase, articles for daily use, to the agents employed to buy millions, the rule is the same; the moment *478 the purchase is made for the principal, he owns the property bought, from the time of its delivery to his agent, and is bound to reimburse the latter for moneys expended by him in the purchase; the property is at his risk and not his agent’s, whatever responsibility the agent may be under for the care and safe transmission of the goods afterwards. They are his property, subject to the lien for the purchase-money, and not his agent’s. The recollection of the only plaintiff examined, -is clear and distinct upon the subject of the terms. He says, “ these were the “ terms upon which the invoice was to be filled.” The question was then put to him, “ can you swear positively “that you communicated to the defendant that you were “ to purchase on the terms enumerated, &c.,” and he answered, “yes;” and being asked why, he said, “simply ■“ because it is our usage. I went immediately down when “the order came.” It is true, he added, “I have no distinct recollection of ever communicating these terms “ personally,” but this means no more than that he testified to an invariable custom, although he did not recollect the -particular occasion. The defendant, on his examination, undertook to deny the notice, but did not testify what the terms of the contract actually were. In his answer, also, although controverting the business of the plaintiffs, as described by them, he does not -undertake to say what it was. There is not the slightest evidence in the case that the plaintiffs were either hardware merchants or manufacturers ; the only evidence offered establishes that they were commission merchants; and the defendant, on his examination, does not undertake to deny it. The letter of 27th October, notifies the defendant that his order is contracted for at certain prices,, to which he makes no objection. Under such circumstances, to infer that the defendant believed that he was buying goods of the plaintiffs, instead of employing them to buy them, would be utterly unwarrantable as a violation of all probability. I -shall therefore' be justified in assuming that they acted as agents, notwithstanding that, being in England, where *479 their principal was not known, they may have paid for the goods. . It would be a novel doctrine that everything for which any one paid at the request of another, became the absolute property of the former, and the loss of it was entirely at his risk.
Assuming that these parties stood in the attitude of principal and agent to each other, the duty of the plaintiffs was manifest, to obey any orders of the principal as to the transmission of the goods, and in the absence of such orders to transmit them in the usual, way. Hone of the liabilities or duties of a factor, to whom goods are consigned for sale, devolved upon them. They were not bound to insure, as the goods were to be but transiently in their possession; it was the duty of the principal to provide for that.
But the defendant directed the plaintiffs to ship at the lowest rate of freight, and in the first of the line of ships prescribed, that sailed after the fall in rates. There was no difficulty in the defendants insuring the goods by an open policy, without knowing in what vessel the goods were to arrive; they did so as to other risks, and there was no danger of loss of the premium, if the risk never attached. Unless they relied on their ability to do so, they should have directed the plaintiffs to insure.
The learned Justice before whom the cause was tried, charged the Jury that it was the duty of the plaintiffs to notify the defendant of the shipment in a reasonable time after it was completed; and the verdict was rendered upon that point in favor of the plaintiffs. Ho exception was taken to the charge upon that point, nor was any request made for a different instruction; and there is sufficient evidence to support the verdict.
But it is said that the plaintiffs must fail to recover, because they failed to procure insurance by the carrier ; this would make the contract entirely conditional, depriving the plaintiffs of the right of recovering money paid for the defendant’s use by them, because they did not have the goods insured. There is no pretense of recoupment or *480 counterclaim here. If the defendant is right, the plaintiffs could not recover, although the. defendant had received the goods, merely because they failed in their duty in one particular. The loss of the goods was without the fault of any one, and they were not rendered entirely worthless; the plaintiff would have been entitled to recover something ; the defense, therefore, should not be as a bar, but a mere recoupment or set-off.
In case of recoupment, the defendant is bound to make out his case affirmatively. The vessel in which the goods were shipped was of the line prescribed; the bill of lading was such as they chose to give; they could not be compelled to alter it and assume other risks, such as those undertaken by underwriters; and there is no evidence that the contract was out of the usual course, or that the plaintiffs could have got any better, so as to become chargeable with negligence. The rates of freight as prescribed, was to be the lowest, so that any additional sum for insurance was probably deducted; there is, therefore, no reason for dissatisfaction with the charge of the Court on that point.
The evidence offered in regard to customs of hardware merchants could not affect commission merchants; the rule of vendor and vendee is entirely different from that of principal and agent. A vendor whose contract is not fulfilled until the goods sold by him are entirely under the control of the vendee, stands in a different position from the agent who has acquired the property for his principal, and may still have duties to perform in regard to it before he can earn his commission. That evidence was properly excluded.
There being, therefore, no- errors in the rulings of the Court or the exclusion of testimony, the verdict should be affirmed and judgment given for the plaintiff, with costs.
White, J., concurred in this opinion.